Good morning. You may be seated. So each side will have 15 minutes, and then the appellant will have 5 minutes to reply to the appellee's argument. Justice Hoffman is also assigned to this case, but unfortunately he also has workers' compensation orals today. So he, I assure you, and I'm sure you don't doubt, that Justice Hoffman will be listening to the tapes of the orals. So with that, I'll call the case. Good morning, counsel. May it please the Court? My name is John Nilek, and I represent Beall Court of Cook County. What we have is a case where you had essentially a battle of the experts. You had two experts. You had Dr. Segovia from the medical examiner's office and Dr. Bodden hired by the defense. And in this case, what you had was contradictory testimony about the rate at which the medical science could assess the damage to this child. It's a highly emotional case. It is a case in which, although here in this chamber we don't have the large video screen of a child on a slab in the medical examiner's office, those were the circumstances at this trial. But what this comes down to is the medical evidence. And our first argument is that no rational trier of fact, based on the evidence that was at trial, would have been able to find the defendant guilty beyond a reasonable doubt. The reason for that is because, as the State points out in their brief, there is evidence that could support a particular conclusion, a finding of guilty. But the standard is not in the light most favorable to the non-moving party, considering only the evidence that the State cherry picks. It has to include all of the evidence, the evidence. The definite article in that admonition is that we have to consider all of that evidence, which includes the testimony from Dr. Bodden. But isn't the finder of fact entitled to disregard certain evidence if they find it not to be sufficiently credible or authoritative? Absolutely. But what we have in this case is we have Dr. Segovia agreeing with the points that Dr. Bodden makes that extends out that time frame. There are a couple of things about that particular element of it. She agrees with him that the CPR could actually rupture the encapsulated liver. She agrees that the liver, that there is a subdural hematoma on the back of the liver encapsulation. And essentially what that does is it says that if there are tears in the liver, but you have the capsule that surrounds the liver, even a child of this size is not going to bleed out. It's not going to leak in the abdominal cavity. Dr. Segovia doesn't measure the blood flow. She can't tell us about the histology. What she says, in fact, is that, well, the literature, some of it goes this way, and the truth is you can't tell. That's her testimony, both on direct and upon cross-examination. What about the other injuries? So the other injuries are important because the difference between the two experts has a lot to do with timing. And what Dr. Bodden says is that those injuries don't all occur at the same time. Of particular importance is the subdural hematoma to the head. There is a bruise on the brain, but the age of that cannot be told. She cannot tell us that. And she admits that there are marks on the child, on the head, but that they don't match up to where the subdural hematoma is, that essentially you have two different injuries. And the timing of those injuries, what she says in direct, is that you have a 24-hour period in which those could come up, that those bruises would look like that. And we know that Armani is in the custody of other people before she's in the custody of the defendant. We know that she is with the family, that there's an uncle who's supposed to take care of her, but the mother says, oh, I'm not going to leave her with that uncle because he's too intoxicated at 8 o'clock in the morning to leave her. We don't know the circumstances of what goes on before him. The reason why that medical analysis is of course important is because of what happens, the major error in this trial, and that is the introduction of the statements for impeachment purposes. There are a couple of really, really important factors to the way that this comes in. First of all, as everyone agrees, Detective Clifford Martin is not available. He's out of the country. So their ability to lay the foundation, if this is such critical evidence and the state, in their preamble, in their brief, before they even get to the statement of the facts, points out that there's a submission. But, the state doesn't put it in in their case in chief. They don't have a detective. They don't have an ability to put in these statements. Now, the statements are, however, in a detective supplemental report, the detective report that Dr. Bodden reads. So what the court assesses is that once they've asked this question, and Dr. Bodden hasn't actually looked at the electronically recorded, he's seen the detective statements. The statements of the whooping are in the detective's statements. They are a summary of what's in the ERI. All that Dr. Bodden hasn't done is he hasn't actually looked at the eight hours of the electronically recorded statement. But, and that then becomes the basis for the impeachment, for bringing this in. However, as the cases that we cite from Rios and the Anderson case make clear, when you have an expert who hasn't assessed those statements as a part of her, Dr. Segovia's analysis, and she admits that she has not, then on the flip side, you've got the question asked to Dr. Bodden. But those statements then have to in some way impeach in order for them to be relevant. And the state does not, or the court does not go through a prejudicial versus probative assessment. Additionally, there are eight other admissions. There's the grand jury of the stepfather, the grand jury of the stepfather, the house examination of Dr. Bodden. Nobody mentions those. The court doesn't step in and say, oh, we've got to prove up this impeachment. And the state doesn't say, we need to prove up this impeachment. This is clear bootstrapping. Well, okay. So the, the, there, so everyone knows there's these admissions in, that is in the detective's report, correct? And you moved to suppress them before trial. That's correct. And that was denied. And does the state have to, when you say there's these other admissions, is this, was, did the state have to prove those up for, for this not to be error, this one that you're raising? Well, I think that the way that the court approaches this and says, look, if the question is asked, then the proof of has to happen. That's the position that the court takes in this and says, this is coming in. You can make your choice. You can either, either have the ERI played with clips or you can make the, what the defense initially has. So the court is limiting the prejudicial impact of his decision to tying it up? Absolutely not. What the court is doing is cherry picking out those particular admissions that are helpful to the state. Because the argument that the defense makes throughout is if the issue is that Dr. Botten didn't look at these eight hours of video, and if the eight hours of video are so important, if that's the impeachment, not that he didn't consider those, but that he didn't look at this particular document, this electronically recorded document, then play the eight hours of video. Because the prejudicial effect is much higher when you allow the state to say, we only want these particular things cherry picked out. But what they're saying is, is that his opinion is somehow suspect or somehow impeached because he didn't go through eight hours of this video. He didn't look at this. Neither did their expert. And the other, if the issue is, every time, it creates such prejudicial effect to ask a question, impeachment by omission, and then not prove it up, then the other errors that are in there, the other impeachments, why aren't those so important? These are a way for the state to be able to bootstrap in these statements that become salient. So you're looking at the question that what the impeachment, the way they were trying to seek to impeach the defendant's expert was to question them about something they highlighted. The eight that we've highlighted and the EOI. Well, let's just talk to the one that you are only really raising this one on appeal. I mean, you're trying to give it more context with the others. Could it possibly be an impeachment by a hypothetical question, which really was what the state was asking? If that were true, if it was impeachment by a hypothetical question, then there's no subsequent introduction of highly prejudicial material against the defendant. The hypothetical question stands on its own. When the experts ask the question, then the expert... Well, that's not necessary. That's not the purpose of a hypothetical question is to include facts that either have been admitted or could be admitted. And based on the answer by the expert, to have that evidence submitted. And had the state asked those questions of Dr. Segovia, then it would fall within what comes out of Rios and comes out of Anderson. And that is that if you have an expert, if that is established as the basis for an expert opinion, that somehow the EOI is categorically different, that that's so important, why not ask Dr. Segovia about it? Because what they're doing is they're not trying to impeach Dr. Biden. You're back on the other track. But if I'm on the impeachment by a hypothetical question, it's a question giving your expert different facts and asking him, would his opinion change? And as the court pointed out, if Dr. Biden had said, no, that doesn't change my opinion, that's it, we're done. Literally what the court says. Which is what would happen on a hypothetical question impeachment. But this expert said, well, that would be bad. So now the state is obligated to bring in that evidence. Except that the way that they do it then becomes the prejudicial effect of bringing in that evidence only for the purpose of having it as substantive evidence. And it bulldozes past any prejudicial versus probative analysis in the court. And the way that it's done is limited by the defense to limit its impact, but it is brought in and then argued by the state as substantive evidence. If you look at the closing argument of the state, the fact that Dr. Biden has somehow been impeached by not looking at this doesn't come in. The state makes one comment and says, oh, he's been paid $20,000 and he didn't look at any of the material. That's the sum and substance of that analysis. It doesn't come in and say you can't trust Dr. Biden because of this. That's not the way that the state uses it. And that's our fourth argument, is that the state oversteps. They say that the liver is torn in half. They say that Dr. Biden didn't look at any of the materials. And then they because their expert hasn't been able to establish the time frame in a way that a reasonable trier of fact could conclude that the state had proven their case beyond a reasonable doubt. You know, in the search for the truth, there needs to be an explanation for the child's injuries that caused her death. Is it your theory of the case that all of this happened somehow before she was placed in the custody of the defendant? It certainly could have. The defense doesn't have the burden in this to prove what happened. But, yes, there could have been injuries that you have an encapsulated liver and Dr. Biden has testified that the idea that the liver was torn in half, these are small lacerations on the liver, admittedly of a small person, but these are small lacerations on the liver and there are four of them. The liver is not destroyed, it's not torn in half or anything like that. And so the bleed rate is incredibly important. And Dr. Segovia can't testify to that. She hasn't testified to the volume of blood in the abdominal cavity. Dr. Biden says, look, if you had a kid who did have liver lacerations and then there are 2,000 blows to that child's chest through the CPR, through the emergency room, all the time that they spend trying to save Armani's life, all of those become 2,000 chest compressions, which is an estimate, but I think a reasonable estimate based on the amount of time that the paramedics and the emergency room personnel say that they work on her. So now you have the blood that has flown out into the abdominal cavity and you don't have the ability to assess when those injuries occurred. And is there testimony in the record from the experts that supports the hypothesis that the injuries could have been inflicted before she was placed in custody of the defendant and simply been dormant and didn't quite create problems until she was actually in the custody of the defendant? That's Dr. Biden's testimony. He says that the lethargic nature of the child could, because the blood isn't circulating back in. It's not bleeding out into her abdominal cavity, but it's not circulating back in. That would explain some of the circumstances that both the mother and that the defendant saw throughout the day. The sleepiness, the lethargic nature of the child, those things could be there. And that you could have injuries, as Dr. Segovia says, from 24 hours that could still be present. And Dr. Biden's testimony is, yes, you do have a time frame that could extend beyond when the child came into the care and custody of the defendant. So, what you have is you have a case in which you have the doctors are in agreement about those factors, about the time frame. You then have the interjection of this admission, which is truly not impeaching when he's already seen the detective stops. There's nothing that is independently important about the ERI, except that it's a way for the state to bootstrap in, get the submission as part of their case, and use it against the defendant. Without a prejudicial versus probative analysis, it's clear air and an injected bias into this trial. Thank you, counsel. May it please the Court? Counsel. Retha Stotts from the state's attorney's office for the people. The defendant has argued this was a battle of the experts. I disagree. He is ignoring the fact that his confession was admitted for two distinct purposes. One purpose was to impeach Dr. Biden, and the             Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you.  I'll take a vote knowing that I've substantively proven unfolded issues. I'll take a vote knowing it's an issue of assessmnet. Not to it, I've merely arrived at the point that there should be substaintive rebuttal evidence of his guilt. It is unclear why a defendant thinks his confession to beating this child would not be admissible at trial. And he has not explained in his brief digs why it wouldn't come in as substantive evidence. There was a clear ruling from the trial court on this. It's totally admissible. And there's no problem with the jury considering it as substantive evidence. So it came in for two reasons. So even if, you know, putting aside defendants' arguments that this was somehow improper impeachment, it's still in for the separate reason. There's no reason why the defendant's confession to committing this crime wouldn't come in. Except for when it came in. Well, and that's – and I agree that is unusual that it came in in rebuttal. I can only speculate as to why that happened. But there's a suggestion in the record that one or both parties initially believed that they couldn't lay a foundation without the detective who took the confession, who was out of the country at the time of trial. Parties put that on the record. But the Court also made findings that, you know, in any case, there was no unfair surprise here. Here's what the Court said. I don't think – he said, it was always admissible. It was always available to them. That's at 698. I don't think the State was laying in wait, surprising the defense. They had this from day one. And as defendants acknowledged, he received it in discovery and tried to suppress it. They knew what their expert was going to testify to. I don't think anybody was prejudiced or taken by surprise. It was strategy calls on both sides. He said to the defendant, you knew once you put on a case, you put on an expert who said, oh, this could have happened the day before. But, of course, the State can rebut that by saying, no, it didn't happen the day before. You admitted that you administered the beating that killed this child. So there's no – you know, even though there's no unfair surprise argument really raised in the brief that's coming up for the first time at arguments, where it would be forfeited, there's also no legal theory that would support it because the defendant doesn't have a right to know ahead of time whether or when the State will introduce the evidence. He had the right to the discovery. He got the statement. He got the list of potential witnesses. But other than that, it's on him if he decides to put on a defense case. He knows this could come in in rebuttal. And so, again, it did – it came in for two purposes. There's also some suggestion now that we couldn't lay the foundation. The judge actually found that this was self-authenticating. He said, defendants – I'm paraphrasing slightly. This is at page 705. But he said, defendants' own words to the police while being videotaped are inherently reliable. There's no foundation problem. So maybe we thought initially we needed the detective, but the judge said we were wrong. This would have come in either way. And, of course, the defendant can't complain about foundation now because he decided to stipulate. He was given a choice, and he decided as a strategic matter he would prefer a, you know, a cold-record, bare-bones stipulation than playing the videotape where the defendant actually confessed to the beating. So once it's clear that the confession is substantive evidence, and that's not challenged in defendant's brief. He's really just focusing on the impeachment issue. Once it's clear that it's substantive evidence that takes care of all the other arguments, the sufficiency argument is easy once you realize that confession is fair game for sufficiency. In addition, we did have abundant circumstantial evidence. You know, the child was in good shape when she entered the defendant's exclusive care, and then she was dead when the ambulance arrived. Defendant was the only one in contact with her. There were two other people in the house, but they didn't see her. They both testified, and the jury credited their testimony. He gave a series of conflicting false explanations for the injuries. I gave her too much medicine. She fell down. She's unresponsive when I got out of the shower. Maybe she hit her head. None of those make any sense. Then he attempts to destroy evidence. He gives her a bath to wash away the DNA from where he bit her. He conceals her face when he carries her upstairs and places her on the sofa. He tells his brother to step back and not look at her and wait for the ambulance. And, of course, he never does anything to obtain medical care. He doesn't call 911. He doesn't tell the mother what hospital she's taken to. He doesn't even ride in the ambulance. So there's plenty of circumstantial evidence, but once you have the confession as substantive evidence, the sufficiency argument is easy. What about the defendant's argument today that Dr. Segovia supports the timeline that they're proposing? I'm not sure where he gets that. Dr. Segovia said that these injuries would have resulted in death within two hours. She said that all the injuries appeared to be inflicted within a time frame to one another. It's true she didn't measure the blood or have any formula to apply, but she said it was an estimate of the time it would take to die from internal bleeding based on the nature of the liver injuries which she examined during the autopsy. So the experts, you know, he said the experts were in agreement about the time frame. Not at all. Dr. Segovia was clear throughout and never wavered. She would have been dead within two hours. What about the CPR, the compressions to the chest? What does Dr. Segovia say about that? She did say that some of the injuries, that it's theoretically possible for some of the injuries to have been caused by CPR. Dr. Rang's testimony to CPR was severely impeached. He demonstrated, you can tell from the transcript, he demonstrated a two-hand CPR like you would demonstrate, perform on an adult and said, you know, a hand covering the breast, that covers a lot of areas, especially in a small child. And then on cross-examination, we asked, well, this would have been three-finger CPR on a two-year-old and he agreed. So the record suggests he was referring to the wrong type of CPR and the ambulance personnel testified that they did perform three-finger CPR, which would have been what you do on a small child. Let's see. The defendant also mentioned the hematoma. Segovia was clear on that, too. She saw four through and through lacerations. I'm sorry, what did you say the defendant argued? Pardon me. I'm sorry. About whether this could have been a subdural hematoma that was inflicted earlier. And Dr. Segovia said there was one subdural hematoma on the backside of the liver, but the blows that caused the lacerations, the four lacerations around the front of the liver, those were inflicted by blows to the front of the body and those were through the capsule. That's what she observed. That's what caused the death. And she said these injuries appeared to all have been inflicted on a time frame to each other, except for one minor injury behind the ear, and there was no evidence of healing. So they were all recent injuries. And then, of course, there was evidence that Armani was in excellent condition when she was given to the defendant that morning. The grandmother and the mother said she was happy and healthy in her normal self, aside from a cold. And the defendant's own confession rebuts this idea that she was already suffering from internal bleeding because the evidence was that would make a person lethargic and not wanting to move around. And his confession is very clear. He beat her because she wouldn't take a nap. What he says, just a couple points. I gave Armani a whooping later. I hit her on the back or whatever later. She still didn't want to go to sleep. She's getting up, moving, all types of stuff. Then I gave her a whooping later. I go back out of the room. She's playing with a toy. I smack her on the butt, boom, boom, boom. I smack her on the butt, and I smack her on the butt. Put her in the bed. I went outside. Next thing I know, she's trying to come upstairs. So the gist of the confession is she's too active. That's why he's beating her. So there is no evidence in the record that the child was injured beforehand. That's speculation on defendant's part. For the sufficiency, we don't have to give the same credit to the evidence he thinks favors his case. We view the evidence in the light most favorable to the state. So if some evidence suggests she was injured earlier and some evidence suggests she wasn't, we presume the jury credited the evidence that favored the state. And here again, there was plenty of evidence. What about counsel's argument that the other impeachment admissions or points were not tied up as this point was? If that is meant to be an argument that the state failed to prove up additional impeachment, that is forfeited. I think he's referring to when the people asked, did you talk to this witness? Did you review this grand jury testimony? That impeachment was complete. There was information existing that he didn't look at. The confession is different. I have to disagree with counsel about the record being clear on whether Dr. Bodden did review the confession. He says it was in a police report. That may be true, but I can't tell from the record. What we can tell from the record is that it was in the ERI and Bodden was very clear that he did not review that. This is why we had to prove that up. He says, well, when was this whooping? If that was additional, if he's telling the truth, that's bad. So he does not admit the fact of the confession. He says, if he said that, that's why we had to prove it up. The fact that he talked to police isn't the impeaching fact. The fact that he admitted beating the child is the impeaching fact. As the trial court found, we could not attempt impeachment that implied he did make that confession without proving it up. Later, Dr. Bodden says, well, I'm not here to determine who's telling the truth. He doesn't realize it's a recorded confession. He says, I'm not here to determine whether the detective's telling the truth or the defendant. So he is equivocating about any confession because he's apparently unaware of it. So the trial court was right in ruling that the state was obligated to prove up that impeachment. And again, even if that was wrong, we still have it coming in as substantive evidence. And that's the part that the defendant hasn't really addressed. There's no reason why his confession wouldn't come in at his trial. And it's proper rebuttal evidence because it directly contradicts Bodden. When he chose to put on Dr. Bodden and said, well, Armani's injuries could have happened the night before. Well, no, they couldn't because the defendant admitted to inflicting those injuries in his confession. So that was proper rebuttal evidence. The woman also mentioned that Dr. Segovia did not review defendant's statements to the police. I have not been able to find that in the record. Even if that's true, I'm not sure how that would matter. It's clear from Dr. Bodden's testimony that he did think defendant's police statements were a proper thing for him to consider because he cited those in his testimony. He cited the exculpatory ones, unfortunately, and apparently didn't review the inculpatory ones. But because he considered that whole category of information, defendant's statements, to be a basis for his opinion, it was proper for us to impeach on the theory that he didn't consider all of it. He only considered the ones that favored defendant. And it was proper for us to prove that up. I suppose the point might be that they're saying that it would be more reliable things that an expert usually or customarily looks to if both Dr. Segovia and Dr. Bodden base their opinions on police reports. I would think that might be their point. An expert, if you're going to impeach, it has to be things that are normally or customarily relied on by experts. So the simple fact that Dr. Bodden said the opinion was based in part on the review of police reports, does that make them the kind of thing you can then impeach him on? It does. If that expert thinks defendant's statements to the police are a category of information that's relevant for his opinion and he clearly did because he talked about the exculpatory statements, it was definitely fair game for the state to say, wait, did you look at this statement where he inculcates himself? And again, I don't know that Dr. Segovia didn't. It would not be unusual to consider this type of evidence. Her report's not in the record. But because Bodden himself admitted to considering statements, it was definitely fair game to say, your consideration was not complete. Here is another statement. Once it's understood that the confession is substantive evidence that takes care of the closing argument problem too, all those statements were proper for the reasons outlined in her brief. But even if the state did overstep a little bit, it's harmless beyond a reasonable doubt given the fact that the confession came in as substantive evidence. Unless the court has any questions? Thank you, counsel. Preliminarily, the argument that we just raised during oral argument is not forfeits on page 19 of our brief where we detail the other eight impeachments by omission that were brought up that were in cross-examination that are part of the record. It was in our brief. It's something that we've argued throughout. But it's an argument in conjunction to your argument about his statements coming in rather than specifically saying that each of those are grounds for reversing. I mean, you're not claiming that those are errors that we should look at for reversal on their own. Literally what we said on page 19 of the brief is that the trial court was markedly silent on the other impeachments by omission that the state brought out, questioned the expert on, but never sought to perfect. Either they asked about eight possible statements and did not perfect their impeachment, which would be error in itself, or the actual purpose of the questioning was to backdoor the statement they wanted into the trial. But we do say that those are independently errors. They can't have it both ways. The state has now explained to this court that the omissions were omissions to inflicting these injuries, which is simply not what the defendant said in this case. It's not the stipulation that was raised. It's not what the ERI. It's not the information that came from the ERI that became the basis for the stipulation. What he says is that he's being questioned and the questions are in the stipulation from the detective that says, so you're whooping her and he's agreeing with the detective and saying that part of the statement. He's repeating that part back to her. But that does not mean that he caused the liver lacerations. They're not saying, did you punch her in the stomach? And he said, yes. There's no matching of the injuries on that child. Significantly, there's no front abdominal injury on Armani. There's the back of the liver with the encapsulation, but there's no matching injury that says, oh, there was clearly a bruise that was inflicted within the past couple of hours or within the past day that has caused that. They're not matched up. There's no admission to those injuries. And what the court said on this is telling because the court decides without any argument from the state that this is substantive evidence that is going to come in. Not that it could come in, but that it's coming in. That when the defense attempts to limit the role that these impeachments would play, that's when the state is essentially silent and the court says this is coming in as substantive evidence without any prejudicial versus probative probing saying, oh, this would be an admission against interest without the question of the foundation. It just comes in at that point. The difficulty for the defendant is that what you have is you have an impeachment by omission saying he didn't rely on these things, but that he did look at the statements from the police. And the question that the state actually asks is whether or not there's a log, a typewritten log of what's on the ERI. That's the question from the state. And Dr. Bottoms' reply to that is to say, well, I looked at the police reports that were on the CD, but I didn't see a video. That's the sum and substance of what he says he didn't see. From there, it gets spun out into, well, we're now going to admit these statements for purposes that become substantive by the time they get around to it in their closing argument. That what happens is you have the interjection of this prejudicial information when you have experts who are in agreement on some of the most salient points that the defense raises. There are no further questions? Thank you, counsel. We will take the case under advisement and we thank you both for your presentations.